# UNITED STATES DISTRICT COURT

__NORTHERN__ DISTRICT OF __ILLINOIS, EASTERN DIVISION__

UNITED STATES OF AMERICA

v.

JESUS PANTOJA
CELESTINO BANUELOS
ROLDOLFO OROZCO
MIGUEL RAMIREZ

**DOCKETED**
NOV 0 7 2005

**FILED**
NOV 0 2 2005
Nov 2. 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

CRIMINAL COMPLAINT

**05CR0896**
05cr 896

CASE NUMBER:

MAGISTRATE JUDGE BROWN

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. In or about __late October and early November 2005__ in __Cook__ County, in the __Northern__ District of __Illinois__ defendants did,

knowingly and intentionally conspire with each other and others to possess with the intent to distribute and to distribute controlled substances, namely, approximately two kilograms of cocaine, a Schedule II Narcotic Drug Controlled Substance,

in violation of Title __21__ United States Code, Section __846__.

I further state that I am a __Task Force Officer with the DEA__ and that this complaint is based on the following
                                            Official Title
facts:

**SEE ATTACHED AFFIDAVIT**

Continued on the attached sheet and made a part hereof: __X__ Yes ____ No

Signature of Complainant

Sworn to before me and subscribed in my presence,

November 2, 2005                              at Chicago, Illinois
Date                                              City and State

GERALDINE SOAT BROWN
United States Magistrate Judge                    Signature of Judicial Officer
Name & Title of Judicial Officer

**STATE OF ILLINOIS** )
                                )    SS
**COUNTY OF COOK** )

### AFFIDAVIT

I, Louis Wittmer, being duly sworn under oath, state as follows:

1. I am a Des Plaines Police Officer currently assigned as a Task Force Officer with the Drug Enforcement Administration, United States Department of Justice (DEA). I am currently assigned to the DEA Chicago Field Division, Chicago, Illinois, and have been so assigned for the past 10 months. Prior to my assignment at the Chicago Field Division, I was a Detective with the Des Plaines Police Department for six years. In connection with my official DEA duties, I investigate criminal violations of state and federal narcotics law, including but not limited to, Title 21, United States Code, Sections 841, 843, 846, 848, 952, 960 and 963. I have received special training in the enforcement of laws concerning controlled substances as found in Title 21 of the Unites States Code. I have also been involved in investigations involving various types of electronic surveillance, the debriefing of defendants, witnesses, informants and others who have knowledge of the distribution and transportation of controlled substances, and the laundering and concealing of proceeds from drug trafficking.

2. This affidavit is based on my own observations and on conversations that I have had with other law enforcement officers

1

and cooperating witnesses. This affidavit is being submitted for the limited purpose of establishing probable cause for a criminal complaint charging Jesus Pantoja, Celestino Banuelos, Roldolfo Orozco, and Miguel Ramirez with conspiracy to possess with intent to distribute and to distribute controlled substances, namely approximately two kilograms of cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of 21 U.S.C. § 846. Accordingly, it does not include everything that I know about the case.

3. On or about October 29, 2005, an individual named Jesus, later identified as Jesus Pantoja ("Pantoja"), met with a reliable cooperating source (hereinafter referred to as CS1). CS1 has provided information which has been corroborated in the past. According to CS1, Pantoja asked whether CS1 was still interested in buying kilos, which CS1 understood to mean kilogram quantities of cocaine, and CS1 said yes. According to CS1, Pantoja then introduced CS1 to an individual named Celestino, later identified as Celestino Banuelos ("Banuelos"); Banuelos said that he had a connection who could supply kilos. According to CS1, Banuelos gave CS1 his phone number, and they agreed that they would set up a meeting.

4. On or about October 31, 2005, CS1 called Banuelos twice and they agreed to meet. Those calls were recorded.

5. On or about October 31, 2005, CS1 and another reliable

cooperating source, (hereinafter referred to as CS2), ~~CS2~~ who has provided information which has been corroborated in the past, ~~CS2~~ CSB met with Banuelos, at the IHOP Restaurant, located at Diversey Ave and California Avenue in Chicago, IL. This meeting was recorded.

6. According to CS1 and CS2, and based on my overhearing the conversation[1] of the meeting at IHOP, the following occurred: During the meeting, CS1, CS2, and Banuelos negotiated concerning the sale of two kilograms of cocaine to CS1 and CS2 for $19,000 per kilogram; Banuelos said that he wanted to do the transaction on the south side of Chicago because it was closer to where it was being stored, which the cooperating witnesses understood to be a reference to where the cocaine was being stored; and Banuelos agreed to meet CS1 and CS2 the following day.

7. On or about November 1, 2005, at approximately 9:00 a.m., CS1 placed a telephone call to Banuelos. That call was recorded. According to CS1, CS1 asked whether Banuelos was ready; Banuelos said yes, and asked CS1 to call him back when CS1 had met with CS2; and Banuelos and CS1 agreed to talk at a later time.

8. On or about November 1, 2005, at approximately 12:00 noon, CS1 received a call from Banuelos. That call was recorded. According to CS1 and a DEA agent who overheard the conversation, Banuelos stated that he was in the area of 21st Street and Damen

---

[1] The conversations were in Spanish; the agent overhearing the conversations speaks Spanish.

Avenue with Jesus [Pantoja], awaiting a call from CS1 for a meeting location and time.

9. On or about November 1, 2005, at approximately 1:40 p.m., CS1 and CS2 met with Banuelos, Pantoja, and a third Hispanic male, later that day identified as Rodolfo Orozco ("Orozco"), at Cocula's Restaurant located at 51st Street and Pulaski Rd, Chicago, IL. That meeting was recorded. According to CS1 and CS2 and based my overhearing the conversation, the following occurred: During the meeting, Banuelos and/or Orozco said that the owner - which I understood to be the owner of the cocaine - did not want them to do the deal in a public parking lot because people had been arrested; Orozco told CS1 and CS2 to drive to 47th Street and Sacramento Avenue in Chicago, IL, where the kilos were located.

10. On or about November 1, 2005, after the meeting at Cocula's Restaurant, surveillance agents observed the following: Banuelos, Orozco, and Pantoja got into Banuelos's van together, and the van left the parking lot with Banuelos driving; Banuelos, Pantoja, and Orozco drove to approximately 47th Street and Sacramento Ave and parked on the street; a short time later, Banuelos, Orozco, and Pantoja got out of Banuelos' van; they stood on Sacramento Avenue, just north of 47th Street, and at approximately 2:00 p.m., surveillance agents observed another male, later identified as Miguel Ramirez ("Ramirez"), exit the area of 4640 S. Sacramento Avenue and meet with Banuelos, Pantoja, and

4

Orozco on Sacramento Avenue.

11. According to CS1, on November 1, 2005, at approximately 2:15 p.m., CS1 received a telephone call from Banuelos, in which Banuelos asked whether CS1 and CS2 were on the way to 47th Street and Sacramento Ave. According to CS1, in the call, Banuelos said that they were ready, which CS1 understood to mean that the three people CS1 had met with were ready to sell cocaine to CS1 and CS2.

12. At approximately 2:35 p.m., on November 1, 2005, surveillance observed CS1 and CS2 arrive at 47th Street and Sacramento Avenue. Surveillance agents observed Ramirez and Pantoja meet with CS1 and CS2. Surveillance agents observed Banuelos and Orozco enter Banuelos' van, and look up and down the street, appearing to conduct counter surveillance. Moments later, surveillance agents saw Ramirez and CS2 walk to the basement apartment of 4640 S. Sacramento Avenue. According to CS2, Ramirez picked up a small blue children's backpack, with a Spiderman decal, from the floor, and Ramirez opened the backpack and showed CS2 two square packages inside the backpack, wrapped in red packaging and clear shrink wrap, which CS2 believed were two kilograms of cocaine.

13. According to CS2, who was wearing a recording device, CS2 advised Ramirez to bring the backpack outside to the car that CS1 and CS2 were driving, because the money would arrive outside; Ramirez agreed and carried the backpack out to the street followed

5

by CS2. Surveillance agents observed Ramirez carrying the Spiderman backpack and walking in close proximity to CS2.

14. When agents arrested Banuelos, Pantoja, Orozco, and Ramirez, the Spiderman backpack was recovered from Ramirez by Special Agent Emilia Fernandez. Agent Fernandez confirmed that there were two packages in the backpack that were wrapped in red packaging and clear shrink wrap. Agent Fernandez then field tested one of the packages for the probable presence of cocaine, and it tested positive.

15. Agents spoke with Ramirez who informed agents that he lived in the basement apartment of 4640 S. Sacramento Ave. Agents asked Ramirez if he would be willing to let agents search the residence, at which time Ramirez said yes. Agents recovered a small white plastic bag containing approximately 5 grams of suspect cocaine and a small digital scale from a purse inside of the closet of the master bedroom. Agents also recovered a large digital scale and a box of large freezer bags from the floor of the closet in the master bedroom.

16. After their arrest, Banuelos, Pantoja, Orozco, and Ramirez were each provided with a verbal and written copy of their *Miranda* rights. Banuelos, Pantoja, Orozco, and Ramirez each waived their rights under *Miranda*, and each provided signed, written statements to agents. Among other things, each individual stated that he had knowledge that he was participating in the sale of cocaine to CS1

and CS2, and each stating that he was going to be paid for his role in the deal.

17. Based upon the foregoing facts, I believe that there is probable cause to believe that Jesus Pantoja, Celestino Banuelos, Rodolfo Orozco, and Miguel Ramirez were each in violation of Title 21 U.S.C. § 846, Conspiracy.

Louis Wittmer, Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me
this 2nd day of November 2005.

Geraldine Soat Brown
United States Magistrate Judge

7