UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

FILED
OCT 23 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>               Plaintiff,<br><br>           -vs-<br><br>MIGUEL RAMIREZ,<br>               Defendant. | )<br>)<br>)<br>) Case No. 05-CR-896-4<br>) JUDGE WAYNE R. ANDERSON<br>)<br>)<br>)<br>) |

## MOTION FOR A DOWNWARD DEPARTURE BASED ON SUBSTANDARD CONFINEMENT IN A NON-FEDERAL FACILITY

**Now Comes MIGUEL RAMIREZ** ("defendant"), acting through his defense attorney, requesting this Honorable Court to consider granting a downward departure based on the substandard conditions of pre-sentence confinement at the non-federal detention facility at Ozaukee County. This request is in accord with 18 USC s 3553(b) which allows the court to depart from the applicable guideline range if it finds there exists an aggravating or mitigating circumstance not adequately considered in the guidelines. The defendant asserts that confinement in a county jail is always a harsher incarceration than at a federal facility, and therefore presents a circumstance to be considered by a sentencing judge with the main factors being length of confinement, the degree to which it is substandard to a federal facility, and any extenuating effects imposed on the defendant due to his special needs not being met.

**As Grounds Therefore,** the defendant presents cases favorable to his position, details of how the jail is substandard, and how the defendant has been especially negatively affected by this extra punitive incarceration.

In the case of **U.S. v. Sutton,** *973 F. Supp.488* (N.J. 1997), we have the following statement's which support the defendant's assertions;

"<u>Unusual pretrial confinement</u>, however, in either length or severity of condition can properly be considered by the sentencing court."

"Judge Lifland, in *United States v. Navarro,* Crim. No. 93-588-14(JCL), and Judge Debevoise, in *United States v. Insuasti,* Crim. No. 96-73-3(DRL), both granted a downward departure because the Sentencing Commission did not adequately take into consideration the possibility of <u>substandard pre-trial confinement</u> when formulating the sentencing guidelines."

"There can be little doubt that <u>pretrial detention in substandard conditions</u> can have a <u>punitive effect</u> not contemplated by the Guidelines. *Cf. Artway v. Attorney General,* <u>81 F.3d 1235,</u> 1263 (3d Cir. 1996) (ostensibly regulatory measure can have punitive effects). Following both *Romualdi* and *Koon,* <u>the Court concludes that it has the authority to depart based on atypical conditions of pretrial confinement.</u>"

One district court had given a <u>thirty-month downward departure</u> from the sentencing guidelines range for the defendant's offense level, based on his incarceration in <u>state and local facilities,</u> even though his stay there was only 2.5 months. (**see U.S. Brinton**, 139 F.3d 718, 720 (9th Cir.1998)

A defendant's <u>special necessities</u> (physical, psychological, etc.), when they aren't being met at a non-federal facility, if they would have been met at a federal facility, can also be a reason for a downward departure. See the following example:

**U.S. v. HERNANDEZ-SANTIAGO,** *92 F.3D 97* (2nd Cir. 1995),
"The court...decided to <u>depart downward three levels</u> because the defendant had been incarcerated <u>22months in a state facility,</u> in the district court's view a "<u>harsher incarceration</u>" than federal imprisonment because of its lack of educational and therapeutic programs [for defendant's diminished capacity and various emotional problems]."

In **U.S. v. Francis,** 98 Cr. 606 (S.D.N.Y. 2001) we read:
"No evidence exists to show that the Commission contemplated that federal pre-sentence detainees would be kept in any detention facilities <u>except for federal facilities</u>. ... Therefore, conditions of confinement <u>below those in federal institutions</u> provide grounds for a departure under U.S.S.G. s 5K2.0." "Because Defendant was subjected to conditions at HCCC that were <u>qualitatively worse than conditions at a federal correctional facility,</u> both particularly and generally, Defendant's motion for a downward departure is granted." "A departure is warranted to acknowledge the <u>qualitatively</u>

different substandard conditions to which Defendant was subjected for an extended period, i.e., his thirteen and one-half months stay at HCCC."

Francis had declared the following substandard conditions which are existent also at the Dodge County Jail, such as inadequate commissary, inadequate recreation, restricted family and counsel visits, lack of programs or work opportunities, food that did not meet basic nutritional needs, lack of personal security because of threats from other inmates (mostly non-federal because the jail failed to segregate federal and state inmates), and inadequate medical attention. All these factors caused him to have continued stress, depressions, and insomnia which affected his substantial rights and equaled an extra punitive incarceration.

**The defendant** lists below the many advantages to being at MCC (a typical federal facility) rather than being at Ozaukee County Detention Facility. This emphasis how the defendant has experienced a <u>harsher, more punitive incarceration</u> by having been Detained in a County jail since February 13, 2006.

### MCC'S Advantage Over OCJ

MCC holds only Federal inmates, not State or INS inmates.

All inmates get 3 hours or more of fresh air and sunshine every week. We get 1 hour as long as the weather is good.

The bed mattresses are twice as thick and have springs under them instead of sheet metal.

The bedding is warmer because of wool blankets (most inmates at OCJ complain of cold air blowing through the vents on them during the night).

Real chicken, beef and fish are served most of the time (not processed inadequate quantity meats as at OCJ).

Breakfast includes fruit (no fruit is served at OCJ, only juice).

There are twice as many items on commissary and the prices are normally half of what they are at OCJ.

The cost of a telephone call if $3.50 for 15 minutes (the calls at OCJ are $18.00 for 15 minutes).

Medical consultations are free (there is a $2.00 fee to consult with the nurse and $5.00 to consult with the doctor at OCJ).

There is a resident Dentist. (To see a dentist at OCJ can take up to a month or more and require a USMS authorization).

Access to a microwave and constant hot water (we have no microwave and we have to get hot water from the shower).

3 hours of contact visits are allowed weekly. (OCJ offers two 30-minute visits, through glass, during the weekdays Tuesday, Wednesday, and Thursday, which can conflict with people schedules.

There is more variety of recreation. (OCJ offers a 20ft. by 20 ft. room with a ping-pong table and same books for 2 hours a week.

15 minutes to court. (OCJ is 2 ½ hours away from Chicago with no traffic).

First time and replacement underwear t-shirt/socks are new. (OCJ gives us used).

Three sets of underwear and 2 jumpsuits with access to wash them twice a week. (OCJ exchanges full uniforms once a week and underwear twice a week.)

There is more variety of Religious Service. (OCJ offers one service on Sunday that lasts 20 minutes.)

Psychological Counseling is readily available. (OCJ has you put in a request and it could take up to a week to be seen).

Medical staff and medication is readily available. (OCJ has to get the US Marshall's authorization for all the medications needed which can take months.)

Thermal underwear and slip on tennis shoes are provided free of charge. ( At OCJ they must be bought on commissary.

There are programs and drug classes offered. (OCJ offers GED classes only. Drug classes are available to county inmates only.)

Respectfully Submitted,

*Charles D. Ingles*
CHARLES D. INGLES

CHARLES D. INGLES
Attorney for Defendant, RAMIREZ
407 South Dearborn
Suite 1675
Chicago, Illinois 60605
1-773-778-5870